UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD MEDICAL, <br><br> Defendant. | CAUSE NO. 3:20-CV-378-MGG |

OPINION AND ORDER

Christopher A. Stanton, a prisoner proceeding without a lawyer, was granted leave to proceed against Wexford of Indiana, LLC ("Wexford"), "for compensatory and punitive damages for its policy and practice of violating the Eighth Amendment by denying medically necessary bottom bunk passes to individuals suffering from diabetic seizures."[1] (ECF 12.) Wexford moves for summary judgment, arguing that Mr. Stanton has not shown he was at substantial risk of harm, and has produced no evidence of an unlawful policy or practice by Wexford of denying bottom bunk passes to inmates who need them for medical reasons. (ECF 35.) Mr. Stanton has filed a response to the motion (ECF 38), and Wexford has replied thereto. (ECF 39.) The matter is now ripe for adjudication.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[1] The court dismissed a number of his other claims at screening, including claims against the Indiana Department of Correction and high-ranking prison officials. (*See* ECF 12.)

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (citation omitted). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The undisputed facts show that Mr. Stanton is 43 years old and has been in the custody of the Indiana Department of Correction ("IDOC") since 2015. (ECF 36-2 at 8.) Prior to his incarceration he worked in the construction business. (*Id.* at 6.) He has a high school diploma and has completed some college course work, but has no medical

2

training.² (*Id.*) He is presently incarcerated at Westville Correctional Facility ("Westville"). (*Id.* at 11.) Prior to that he was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley), and prior to that was at Pendleton Correctional Facility ("Pendleton"). (*Id.* at 9, 15-16.) Wexford is a private company that previously provided medical services at Indiana prisons, including during the events relevant to Mr. Stanton's complaint. *See Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021). Wexford's contract with the Indiana Department of Correction terminated in July 2021 and it was replaced by Centurion Health. *Id.*

      Mr. Stanton has been diagnosed with and takes medication for several chronic conditions, including diabetes, high cholesterol, migraines, and night terrors. (ECF 36-2 at 10; ECF 36-3 at 2-3.) He is under the care of prison doctors for these conditions and sees them routinely for chronic care visits. (*Id.*) He also sees nursing staff daily when they give him his medications, including his insulin which he receives three times a day. (ECF 36-2 at 12.) He has never been diagnosed with a seizure disorder. (*Id.* at 20.) However, he attests that he sometimes has incidents of low blood sugar as a result of his diabetes, during which, in his words, "I like go into a seizure." (*Id.* at 16.) Usually the situation can be remedied by his cellmates getting "peanut butter in me real quick and [getting] my blood sugar up." (*Id.* at 18-19.)

---

² He testified that he obtained a CPR certification in a high school swim class, but this certification has since lapsed. (ECF 36-2 at 6.)

While incarcerated at Westville, there have been two incidents where he has fallen off the top bunk due to experiencing low blood sugar symptoms. (*Id.* at 21.) The first incident happened in December 2019, and the second in January 2020. (*Id.*) After the first incident, he put in a request for health care dated December 21, 2019, stating that he was in need of a bottom bunk pass. (ECF 36-3 at 1.) He was told by Health Services Administrator Dorothy Livers that he "do[es] not meet the criteria" but to discuss the issue with his doctor at his next chronic care visit. (*Id.*) He next saw his doctor, Dr. Andrew Liaw, on January 24, 2020. (*Id.* at 2-5; *see also* ECF 36-2 at 23.) Mr. Stanton acknowledges that the doctor wrote him a bottom bunk pass on that date.[3] (ECF 38 at 1.) At the time of his deposition in February 2022, he still had a bottom bunk pass. (ECF 36-2 at 15.) He also had bottom bunk passes at his prior facilities—Wabash Valley and Pendleton—where Wexford provided medical care. (*Id.* at 15-16.)

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about

---

[3] There is some conflict in the record as to when exactly Dr. Liaw issued Mr. Stanton a bottom bunk pass, but the court is required to construe the facts and all inferences arising therefrom in Mr. Stanton's favor, and he attests it was on January 24, 2020. (ECF 38 at 1.)

4

the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

The Eighth Amendment also imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To prevail on such a claim, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). A mistake or negligent act is not enough. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018).

There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable for an Eighth Amendment violation solely because it employed Ms. Livers, Dr. Liaw, or other medical professionals involved in Mr. Stanton's request for a bottom bunk pass. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir.

5

2020). Wexford can be held liable for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), during the time it was performing a state function. *Hildreth*, 960 F.3d at 422. Under *Monell*, however, Wexford "cannot be held liable for the unconstitutional acts of [its] employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

Here, the court will presume for purposes of this opinion that Mr. Stanton had a medical need for a bottom bunk pass. It is true, as Wexford points out, that he has never been formally diagnosed with a seizure disorder. But he has offered unrebutted evidence that he fell from his top bunk on two occasions after experiencing low blood sugar symptoms caused by his diabetes. (ECF 36-2 at 21; *see also* ECF 1-1 at 1.) The court must "consider all of the evidence in the record in the light most favorable" to Mr. Stanton. *Dunn*, 880 F.3d at 905.

Nevertheless, he has failed to come forward with evidence from which a reasonable jury could conclude that Wexford has an unlawful official policy or practice of denying bottom bunk passes to inmates who need them for medical reasons. To the contrary, the record shows that Mr. Stanton has held a bottom bunk pass at multiple correctional facilities where Wexford was responsible for providing medical care. He was issued bottom bunk passes at both Wabash Valley and at Pendleton. (ECF 36-2 at

16, 26.) Dr. Liaw also issued him a bottom bunk pass at Westville after the matter was brought to his attention. (*Id.* at 15, 27; ECF 38 at 1.) At most he has shown that one Wexford employee—Ms. Livers—told him he did not meet the criteria for a bottom bunk pass (presumably because he had not been formally diagnosed with a seizure disorder), but that he should raise the issue with his treating physician. (ECF 36-3 at 1.) When he did, he was given a bottom bunk pass, and he continues to have the pass at present. (ECF 38; ECF 36-2 at 26-27.)

He claims that a nurse at urgent care whose name he cannot remember told him Wexford had an official policy of denying bottom bunk passes even when they are medically necessary. (ECF 36-2 at 5.) However, he does not submit affidavits or sworn declarations from any nurses, and his own account of what they told him is inadmissible hearsay. "Inadmissible hearsay evidence may not be considered on summary judgment." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021). Nor has he come forward with evidence of any other alleged instances of inmates being denied bottom bunk passes to suggest there was a widespread custom or practice at play, rather than the actions of one or more "rogue" employees. *Howell*, 987 F.3d at 654. In short, the record is devoid of evidence linking any injury Mr. Stanton suffered to an unlawful policy or practice of Wexford. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury"). Therefore, Wexford is entitled to summary judgment.

For these reasons, the motion for summary judgment (ECF 35) is GRANTED, and judgment is ENTERED in favor of Wexford Medical. The clerk is DIRECTED to close this case.

SO ORDERED on May 26, 2022

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
